**HENSEL, BRUCKMANN & LORBACHER, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 79–12–01861.**

United States Court of International Trade.

June 15, 1983.

Rode & Qualey, New York City (Patrick D. Gill at the trial, John S. Rode, New York City, with him on brief), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, International Trade Field Office, Commercial Litigation Branch, New York City (Saul Davis, New York City, at the trial and on brief), for defendant.

RAO, Judge:

This civil action, consolidated with others which embrace similar issues of fact and law, involves the appraisement of industrial sewing machine needles manufactured in West Germany by Ferd. Schmetz, GmbH (Schmetz) and exported to the United States during a period of time from 1975 to 1980. The United States Customs Service (Customs) appraised the merchandise on the basis of foreign value under section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at prices contained in home market price lists.

Plaintiff claims that the proper basis of appraisement is export value under section 402a(d) of the Tariff Act of 1930, as amended, *supra,* at prices contained in the Schmetz series 33 export price lists, less 3 percent.

It is undisputed that the merchandise is on the Final List published by the Secretary of the Treasury pursuant to section 6(a) of the Customs Simplification Act of 1956, T.D. 54521, and therefore valuation is governed by the provisions of section 402a of the Tariff Act of 1930, as amended (19 U.S.C. § 1402). The merchandise must be appraised on the basis of foreign value or export value of such or similar merchandise, whichever is higher. Foreign value and export value are defined in section 402a(c) and 402a(d) respectively as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such. or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The statute requires that, if possible, the foreign and export values for the imported merchandise be ascertained and that if there is no foreign or export value for such merchandise, the foreign and export values of similar merchandise be ascertained, and the higher of these values be used in the valuation of the merchandise.

The question for this Court becomes whether a foreign value for the merchandise exists that is higher than its export value, and if not, whether there is a foreign value for similar merchandise that is higher than export value.

Plaintiff maintains that foreign value for the merchandise does not exist at the home market prices used by Customs to appraise the industrial sewing machine needles. During the period of exportation to the United States, those prices were not freely offered to all purchasers in West Germany

in the usual wholesale quantities as there were restrictions on the sales made at these prices, according to the plaintiff. These restrictions included a program of resale price maintenance, restricted sales to selected quantity purchasers and sales through a territorial dealership network of distribution.

Plaintiff introduced evidence and adduced the testimony of witnesses which tended to establish that Schmetz is the largest producer of industrial sewing machine needles in West Germany. It sells directly to manufacturers of sewing machines in West Germany, and also to preferred customers, i.e. factories which use industrial grade sewing machine needles in large quantities. These customers receive various discounts from the home market price list prices.

Other sales are made through a network of dealers who in turn sell to end users at the price list prices. The discount to the dealers represents their profit. Occasionally, orders by end users of this type of merchandise are placed directly with Schmetz. Schmetz discourages this practice by sending a form letter acknowledging the order and stating that the order will be processed through a dealer. These sales involve smaller quantities than those to the dealers, the preferred manufacturers and the sewing machine manufacturers. The network of dealers was set up by Schmetz and is controlled by it, and the sales from the dealers to the consumers are in the ordinary course of business.

It is plaintiff's position that the sales to end users are restricted in that they must be consummated through the territorial dealers. It is also plaintiff's position that the sales to the dealers are restricted in that these sales are controlled by Schmetz in that it sells only to selected purchasers, that is, its selected territorial dealers rather than to all dealers or distributors who wish to purchase.

■ As to the sales to manufacturers of sewing machines and to the preferred manufacturers, it has been held by this Court that sales in the home market to purchasers who contract for large quantities are not sales made in the usual course of business and that they do not constitute a free offering to all purchasers. *Victor Animatograph Corp. v. United States,* 2 Cust.Ct. 954, R.D. 4577 (1939). Therefore, these sales should be disregarded in determining whether a foreign value for the merchandise exists.

■ Where merchandise is offered for sale by the manufacturer to selected purchasers only, or through exclusive agents, the market is restricted, and such sales may not be considered in determining dutiable value. *Hulse Import Co. v. United States,* 29 Cust.Ct. 504, R.D. 8181 (1952). Thus, the sales to the dealers should not be considered in determining whether a foreign value exists. This leaves only those sales to end users which are orders of small quantities based on the purchaser's needs which cannot be readily supplied or satisfied by the dealers. Although defendant has introduced into evidence a chart depicting that 24 percent of the sales by Schmetz as being to end users, the statistics are given by the number of orders, rather than in terms of quantities of industrial sewing machine needles sold or the value of the sales. The letters submitted by plaintiff in which orders directly from the small end users are referred to territorial dealers indicate that these orders were for less than the usual wholesale quantities, which defendant has conceded to be 1,000 needles. Therefore, these sales, being in less than the usual wholesale quantities, should not be considered in determining whether foreign value of such merchandise exists.

■ Since plaintiff has established that all of the sales of the merchandise in the home market in the usual wholesale quantities are restricted for the period under consideration, there is no foreign value for the merchandise.

It remains to be determined, however, whether a foreign value existed for "similar" merchandise in the home market between 1975 and 1980. There are two other manufacturers of industrial sewing machine needles in West Germany besides

Schmetz—Leo Lammertz Nadelfabrik (Lammertz) and the Singer Company. The parties have agreed that the Singer Company did not freely offer similar merchandise for sale in West Germany during the relevant period of time, so only the merchandise manufactured by Lammertz during 1975 to 1980 need be considered in determining whether a foreign value existed for similar merchandise.

Plaintiff introduced evidence by way of affidavits tending to establish that Lammertz utilized a network of dealers similar to that employed by Schmetz and that these dealers were controlled by Lammertz in much the same way that Schmetz controlled its dealers, that is, restrictions as to sales territories and resale prices. Accordingly, plaintiff has established a *prima facie* case that similar merchandise is not freely offered in the home market to all who wish to purchase in the usual wholesale quantities in the principal markets of the country of export.

Defendant's case in rebuttal consists in a large measure on reliance on the assumption of correctness which attaches to the actions of the appropriate Customs officer, and in an attempt to discredit the affidavits submitted by the plaintiff. It attempted to exclude them from being introduced into evidence, citing its right to cross-examination of witnesses at trial. It takes the position that plaintiff did not demonstrate that the attendance at the trial of the deponents could not reasonably have been had. However, 28 U.S.C. § 2635(b) accords the trial court the discretion to admit or preclude affidavit testimony where the attendance of the deponents cannot reasonably be had and the weight to be given to such evidence is a matter for the court.

The averments of the various affidavits introduced by the plaintiff were not rebutted by evidence introduced by the defendant, and to the extent that they established that both Schmetz and Lammertz controlled the territorial dealers as to resale prices, geographical areas of distribution and other matters, absent testimony or other affidavits to the contrary, the Court gives them probative weight, and concludes that foreign value for similar merchandise did not exist in the home market during the period of time between 1975 and 1980.

Plaintiff makes an additional claim for interest pursuant to 28 U.S.C. § 2644 which provides that if, in a civil action commenced in this court on or after November 1, 1980, the plaintiff obtains monetary relief by judgment or stipulation agreement, interest shall be allowed from the date of the filing of the summons in the action to the date of the refund. The amount of the interest allowed is at the rate established under section 6621 of the Internal Revenue Code of 1954.

Court Number 80–11–00076, consolidated with this action, was filed after the date specified, *supra,* having been filed on November 21, 1980 and plaintiff duly made its demand for interest. The calculation of the interest payable to the plaintiff by the appropriate Customs officials responsible for determining the amount of the interest to be paid upon reliquidation should be made with reference to the date of filing.

Plaintiff also makes a claim that domestic needles involved in Court No. 79–12–01908 were appraised on the basis of foreign value and that defendant has conceded that these appraisements were erroneous and that they should have been appraised in accordance with the 33/75 list prices. It is adjudged that these domestic needles should have been appraised on the basis of export value, at those prices.

Let judgment enter accordingly.