**HENSEL, BRUCKMANN & LORBACHER, INC., Appellee,**

v.

**The UNITED STATES, Appellant.**

**Appeal No. 83-1312.**

United States Court of Appeals, Federal Circuit.

June 8, 1984.

Saul Davis, New York City, argued for appellant. With him on the brief were J.

Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, New York City, Atty. in Charge, International Trade Field Office.

Patrick D. Gill, New York City, argued for appellees. With him on the brief was John S. Rode, New York City.

Before RICH, KASHIWA and SMITH, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this customs valuation case appellant, the United States (Government), appeals from a judgment of the United States Court of International Trade (trial court), concerning the appraisement of industrial sewing machine needles imported by appellee, Hensel, Bruckmann & Lorbacher, Inc. (Hensel). We affirm.

### Issues

The Government raises four issues before this court, contending that the trial court: (1) committed reversible error in permitting the introduction of certain affidavits and letters; (2) erred in finding no freely offered price for certain sewing machine needles; (3) erred in finding no freely offered price for certain similar sewing machine needles; and (4) erred in entering judgment without a finding that the claimed export values for certain needles were correct.

### Background

We do not repeat here the factual and statutory background which the trial court set forth in its opinion.[1] We note that this case concerns industrial sewing machine needles which Hensel, a U.S. customs broker, imported from a West German manufacturer, Ferd. Schmetz GmbH (Schmetz), during the period 1975–80. The United States Customs Service (Customs) appraised these needles using foreign value, whereas Hensel claims, and the trial court

---

1. *Hensel, Bruckmann & Lorbacher, Inc. v. Unit-* ed States, 569 F.Supp. 849 (C.I.T.1983).

agreed, that the needles should have been appraised using expert value.[2]

## Opinion

■ We note first that our standard of review of questions of fact is "clearly erroneous" and of questions of law is "not entitled to the deference we [exercise]" with questions of fact.[3]

### 1. The Affidavits and Letters

■ The Government first contends that the trial court committed reversible error in permitting the introduction of certain affidavits and evidence from "persons whose attendance [at trial] cannot reasonably be had."[4] In particular, the Government claims that the evidence so introduced was from the alleged real party in interest, the German manufacturer of industrial sewing machine needles, Schmetz, as opposed to the customs broker and importer of record, Hensel, whom the Government denominates a "paper plaintiff." Accordingly, the Government theorizes that its statutory right to cross-examine the other party's witnesses and to rebut its evidence[5] has been prejudiced.

We do not agree. The trial court has broad discretion under section 2639(c)(1) to determine the factual issue whether attendance of witnesses or deponents "cannot reasonably be had." Moreover, that provision refers to "persons," making no distinction between parties and nonparties, much less between "real" parties and "paper" parties. We have thoroughly reviewed the record in this case and find no reason to disturb the trial court's factual finding on the availability of those witnesses. For example, it developed that one critical witness, Mr. Applerath, was retired, of advanced age, and no longer under Schmetz' control. Another key Schmetz witness, Dr.

Hagen, would have appeared at the trial noticed for July 29, 1981, but the Government opposed this date. We therefore find no clear error and affirm the trial court's finding.

■ Likewise, we have reviewed the record as regards the Government's subpoint that the Kuhn affidavit and the two Liebold letters were not admissible because they were not properly sworn "affidavits" as contemplated by section 2639(c)(1). The former affidavit was duly sworn before a West German notary, as was the second of the Liebold letters, which was essentially identical to the first. Moreover, the statute specifically excepts application of the Federal Rules of Evidence, including the rules pertaining to authentication of foreign documents to which the Government cites us, in this situation.[6] The trial court, in weighing the probative value to be given all of this "section 2639(c)(1)" evidence, has properly taken into account these concerns.[7]

### 2. The Freely Offered Price for Schmetz' Needles

■ Secondly, the Government attacks the trial court's holding that there was no freely offered price to all purchasers in West Germany for Schmetz' needles. The Government emphasizes that the price must be the freely "offered" price under the pertinent statute,[8] as opposed to the actual sales price. In this regard the Government focuses on Schmetz' offered prices to end users in the West German market, arguing that Schmetz' issued price lists constituted such offers, even though the end user may have actually paid a dealer.

The Government's position does not correspond to the facts, however, either as

---

2. *See Hensel,* 569 F.Supp. at 850, setting forth the applicable statutory definitions of "foreign value" and "export value" found in 19 U.S.C. § 1402 (1976) (repealed 1979).

3. *Daw Indus., Inc. v. United States,* 714 F.2d 1140, 1142 (Fed.Cir.1983).

4. 28 U.S.C. § 2639(c)(1) (1982).

5. 28 U.S.C. § 2641(a).

6. 28 U.S.C. § 2641(a).

7. *Hensel,* 569 F.Supp. at 852.

8. 19 U.S.C. § 1402(c) (1976) (repealed 1979).

found by the court below or as evidenced in the ruling of Customs' Classification and Value Division. The trial court found persuasive Hensel's position that Schmetz restricts its offers for sales to end users through its dealers because Schmetz selects and monitors those dealers, rather than offering needles for sale to any and all dealers or distributors.[9] Customs also found, in its ruling dated June 28, 1979 (plaintiff's exhibit 22 in the record below), that Schmetz restricted its dealers as to sales territory and resale prices.[10] Our review of the record likewise leads us to conclude that, based on the facts in that record, the trial court correctly applied the law, and we affirm the trial court on this point.

### 3. *The Freely Offered Price for Similar Needles*

 Thirdly, the Government contends that the trial court erred in finding no freely offered price for the sale of *similar* needles in West Germany. It bases its contention in part on an attempt to exclude or discredit the affidavits, which we have discussed above, and in part on evidence that Lammertz, Schmetz' main competitor in West Germany, had long taken the position before Customs that its needles were freely offered for sale in West Germany. The trial court fully considered the Government's evidence, offered in rebuttal to the prima facie case which Hensel established that Lammertz did indeed restrict the manner in which it offered its needles for sale in West Germany.[11] Our review of the record indicates no error in that holding, and we affirm.

### 4. *The Judgment*

Finally, the Government claims that the trial court erred in entering judgment against the Government because there was no finding that Schmetz' claimed export values for the needles were correct. This is flatly contradicted by the record, wherein the Government stipulated to the use of the specified Schmetz export price lists, should Hensel prevail on export value. We therefore affirm the trial court on this final issue as well.

AFFIRMED.

---

9. *Hensel,* 569 F.Supp. at 851.

10. Customs nevertheless concluded that foreign value existed because Schmetz made some direct sales to end users at list prices. The trial court rejected these sales after finding that they were "for less than the usual wholesale quantities." *Hensel,* 569 F.Supp. at 851.

11. *Id.* at 852.